## THE SJURSO.

(Circuit Court of Appeals, Second Circuit.   January 18, 1922.)

### No. 87.

**Maritime liens ⬥65—Claim to lien for stevedoring services held not sustained by the evidence.**

A claim to a lien on a ship for stevedoring services rendered in loading the ship, which was under a charter requiring the charterer to pay for such services, *held* not sustained by the evidence, where it rested on the testimony of libelant's president that the master agreed that the vessel would be reponsible, which was positively denied by the master, who was corroborated by the fact that he had been previously advised by the ship's agent that the charterer was not financially responsible and to be cautious.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by the Northern Stevedoring Company, Inc., against the bark Sjurso, the Christianssands Shipping Company, Limited, claimant, with the Caravel Steamship Lines, Inc., impleaded. Decree for respondent, and for libelant against Caravel Steamship Lines, Inc., and libelant appeals.   Affirmed.

The final decree of the District Court for the Eastern District of New York dismissed the libel against the Sjurso, granted claimant's petition impleading the trustee in bankruptcy of Caravel Steamship Lines. Inc., the charterer of Sjurso, and awarded libelant $6,053.01 against charterer's estate in bankruptcy. The amended libel alleged that the master of the Sjurso engaged libelant to perform stevedoring services, and that such services were performed between June 8 and July 10, 1919.  This allegation was vigorously denied, and the facts support the denial.

The Sjurso was a Norwegian bark, and one of the sailing vessels employed by the United States Shipping Board under the Norwegian sailing vessel agreement, by which this class of tonnage was brought into Allied service during the war. The Shipping Board had power to compel the chartering of the vessel to their nominee, and did compel the owner's agent in New York, S. O. Stray & Co., Inc. (hereinafter called Stray), to charter the Sjurso on the standard net form charter (under which charterer must pay for stevedoring) to Caravel Steamship Lines, Inc., now bankrupt, although Stray protested that Caravel was not a responsible charterer. The Sjurso was in Philadelphia when the charter was signed, May 3, 1919, and Stray, in its anxiety to protect the owners, procured from the Caravel Lines a bond securing the payment of the charter freight. This was the utmost they could obtain. A copy of the charter party was furnished to the master, and Stray kept him fully advised by correspondence. As soon as he reached New York, the master called on Stray, and almost daily thereafter. The master was thoroughly informed as

to Stray's opinion of Caravel, and knew that Caravel, under this form of charter party, must be kept responsible for all expenses, including stevedoring. Mr. Thavenot, the secretary and treasurer of Stray, had almost daily conferences with Johnson, the master of the Sjurso, and Johnson never consulted Thavenot as to making any agreement with libelant, nor did he ever mention having been approached by it with a request that the vessel should stand good for the stevedoring. It was well known throughout the stevedoring business in this port that the great number of Norwegian sailing vessels loading here all came under the Norwegian sailing vessel agreement and were fixed on standard net form charter parties.

Libelant was employed by the officers of Caravel Steamship Lines, Inc., the charterers, to furnish stevedoring and similar services to the Sjurso. The president and general manager of libelant had known these officers for two years, knew they were of no financial standing, had no confidence, financially, in the Caravel Lines and knew that it owned no ships. He claims that, when he went on board the Sjurso to arrange for the discharge of ballast, he told Capt. Johnson that the Caravel Lines were not financially responsible; that the master thereupon agreed that Caravel Lines were his owner's agents, never suggested that they were the charterers of the ship, never mentioned that the owner had the well-known firm of Stray as his agent in this port, and, as soon as reference was made to the irresponsibility of Caravel Lines, said that the ship was responsible, and that he would see that the bills were paid.

The master denied absolutely that he had been approached by libelant's president on this subject, or that he had given any assurance whatever as to the payment of the stevedore's bill. Libelant's workmen performed services as stevedores, discharging ballast and loading, stowing, and trimming cargo, keeping a lighter on demurrage, and through a subcontracting corporation, watching, tallying, and coopering.

Frederick W. Park, of New York City, for appellant.

Haight, Sanford, Smith & Griffin, of New York City (Herbert K. Stockton and Cyril S. Stanley, both of New York City, of counsel), for claimant.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). The District Judge, confronted with the necessity of determining whether the president of libelant or the master of the Sjurso had given the correct version as to the circumstances in which the stevedoring was undertaken did not flatly decide the question of credibility, although he plainly intimated that he accepted the master's testimony.

As this appeal is a new trial, it becomes our duty, at the threshold of the case to ascertain what the fact was in respect of the stevedoring engagement; for, if we find that libelant has failed to sustain the burden of proof as to the making of the alleged agreement, discussion of the points of law argued at bar will become academic.

The testimony of the master was taken by deposition at Norfolk on September 14, 1920, before any other witness was heard. It shows that he was an experienced man, with 23 years' sea service. He had with him on board his vessel in May and June, 1919, a copy of the charter, dated May 3, 1919, between Stray, as agent, and the Caravel Lines. In answer to a series of questions, he stated in positive language that he had never engaged libelant to do the stevedoring, and had never been informed that libelant's services were rendered on the vessel's account.

Thavenot, whose office was at 11 Broadway, testified that under the charter party the charterers were responsible for all expense in loading and discharging the vessel, and that the master had a copy of the charter. He informed the master of his opinion of the charterer and the master "adopted a very cautious attitude towards the charterers." The Christianssands Shipping Company of Norway, owner of the Sjurso, had a credit with Stray, which was "practically unlimited on all their ships," and Stray was in sound financial condition.

Thavenot knew libelant and its president about January, 1919, and some time after that received a letter from libelant asking for Stray's business, but that was all. Thavenot told the master to be very careful, because all that Stray "had there was the payment of freight." Stray had another and responsible charterer waiting, and that fact the master knew. The president of libelant testified, in open court, on October 29, 1920. He stated that he told the master that:

> "We had quoted the agents of the vessel the prices, and came up to confirm it with him, to see if it was O. K. to go ahead and do the work, as we knew the Caravel * * * were not financially responsible. * * * He [Johnson] seemed to think they were all right; that they would pay the bill and the ship would be responsible for it. * *. * He said to send the bill to the Caravel Company, and he would see the bills in the Caravel office, and see that they were paid."

He further testified that the master said that the Caravel concern "were his agents." The bills were delivered by libelant to the Caravel office. The first time there was any question with the master was after the vessel was loaded, when meeting him in Broad street, he told libelant's president that he was not going to pay the bills, and had been advised he was not responsible for them.

Every probability and surrounding circumstance confirm the master's testimony. There was not the slightest reason why he should pledge the credit of the ship and every reason to the contrary. It seems incredible that he should have told libelant's president that Caravel Lines was his agent, when Stray was his agent, or rather his owner's agent, and when Stray had an office in New York, and was in funds, and when he had been warned by Thavenot, Stray's secretary and treasurer, against the charterer. He knew that the charter was net form, under which Caravel Lines had to hire the stevedores and see that their bills were paid. In such circumstances, it would have been strange, to say the least, if he had hired the stevedores and pledged the credit of the ship, without consulting the owner's agent.

Further discussion of the facts seems unnecessary. It is enough to state that on the facts we have no doubt that libelant has failed to prove the agreement alleged to have been made by the master, and that conclusion disposes of the case. Piedmont Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 12, 41 Sup. Ct. 1, 65 L. Ed. 97.

Decree affirmed, with costs.